IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| LISA FORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-2721-STA |
| | ) | |
| FEDEX SUPPLY CHAIN SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

_____

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
_____

Before the Court is Defendant FedEx Supply Chain Services, Inc.'s Motion for Summary Judgment (D.E. # 23) filed on December 19, 2008. Plaintiff responded in opposition on January 28, 2009.[1] For the reasons set forth below, the Motion is **GRANTED**.

**BACKGROUND**

The following facts are not in dispute: Plaintiff Lisa Ford is a former employee of Defendant, where she worked from 2000 until 2005. Def.'s Statement of Facts ¶ 1. Prior to 2000, Plaintiff was employed by a separate FedEx corporate entity that does business as FedEx Express; FedEx Express is not a party to this lawsuit. *Id*. at ¶ 2. Around 2002, Plaintiff was reassigned to a position as a warehouse agent. *Id*. at ¶ 3. As a warehouse agent, Plaintiff's

---

[1] Defendant filed a Motion to Strike (D.E. # 27) Plaintiff's response brief arguing that the response was untimely and otherwise did not meet the requirements of Rule 56(c). The Court finds that Plaintiff's response was timely; however, the response did not comply with Local Rule 7.2(d)(3). Rather than striking Plaintiff's brief for failure to proffer admissible evidence in support of her response, the Court will deem Defendant's statement of facts to be undisputed. Therefore, Defendant's Motion to Strike is denied.

1

duties included filling orders and shipping items from a warehouse that Defendant operated for a military customer known as the Defense Logistics Agency ("DLA"). *Id*. The warehouse agent position required Plaintiff to be able to lift from 5 to 250 pounds, using a forklift for larger packages. *Id*. Around the summer of 2004, Plaintiff was diagnosed with a non-malignant tumor or cyst in her right shoulder. *Id*. at ¶ 5. Plaintiff's physician temporarily restricted her from lifting more than 25 pounds. *Id*. According to Plaintiff, she continues to suffer from this condition, and it continues to cause her to be unable to lift more than 25 pounds. *Id*. Plaintiff continued to work in the same position after her diagnosis. *Id*. at ¶ 6. Plaintiff's supervisors never made any statements or comments that would indicate that they were discriminating against Plaintiff on the basis of her alleged disability. *Id*. Plaintiff never requested any sort of work accommodation for her condition. *Id*. at ¶ 7.

On September 15, 2005, Plaintiff was informed that Defendant was losing the DLA account, and that her position would be eliminated on September 30, 2005. *Id*. at ¶ 8. Defendant subsequently extended Plaintiff's termination date and allowed Plaintiff to bid on other open positions within FedEx. *Id*. at ¶ 9. On October 5, 2005, Defendant informed Plaintiff that her last day of work would be October 14, 2005, at which time she would be placed on unpaid personal leave of absence through November 11, 2005. *Id*. If she was not able to secure an alternate position, her last day of employment would be November 11, 2005. *Id*.

Plaintiff applied for several open positions, and she was interviewed by Donna Corbin, who was a manager with Defendant. *Id*. at ¶ 10. During her interview, Plaintiff was somewhat combative and Plaintiff told Corbin that she resented being required to interview for an open position in light of her tenure with the company. *Id*. at ¶ 11. Corbin had no knowledge of

Plaintiff's physical issues or alleged disability at the time that she interviewed Plaintiff and made her hiring decisions. *Id*. at ¶ 12. Corbin did not select Plaintiff for the open positions. *Id*. at ¶ 13. Corbin informed Plaintiff of her rejection during October of 2005. *Id*. On November 11, 2005, Plaintiff's employment was terminated. *Id*. at ¶ 14. In addition to Plaintiff, several other employees working on the DLA account were terminated after Defendant lost that account. *Id*. at ¶ 15. Plaintiff admits that several of the other employees who were laid off had no physical limitations. *Id*. Plaintiff admits that she was never told that her physical condition had anything to do with her layoff from Defendant. *Id*. at ¶ 16.

After being laid off, Plaintiff sought benefits from the Tennessee Department of Human Services. *Id*. at ¶ 17. The department rejected Plaintiff's request because it found that Plaintiff did not have a significant disability. *Id*. In 2006, Plaintiff called a member of the Defendant human resources department, Ben McGivearn, to inquire about openings at Defendant. McGivearn told her that they would be hiring material handlers, but Plaintiff told him that she was not interested in a material handler position. *Id*. at ¶ 18. After leaving Defendant, Plaintiff worked as a gas station attendant, where her duties included cleaning bathrooms, mopping the floor, stocking shelves and handling money as a cashier. *Id*. at ¶ 19. Plaintiff now works full time as a data entry clerk at the Regional Medical Center ("The Med"). *Id*. at ¶ 20. Plaintiff also spends an hour or two a day running her "Avon" cosmetic sales business. *Id*. at ¶ 21. Plaintiff has also attended classes at Southwest Community College. *Id*. at ¶ 22. Plaintiff was physically able to drive herself to class and sit through hour-long classes. *Id*. The tumor in Plaintiff's shoulder is her only health issue. *Id*. at ¶ 23. Despite the tumor in her shoulder, Plaintiff is able to perform manual tasks and care for herself; she is able to cook, clean and bathe herself. *Id*. at ¶

24. Plaintiff is also the sole caregiver for her ten year old daughter. *Id*. at ¶ 25. Plaintiff filed her charge of discrimination with the EEOC on August 30, 2006. *Id*. at ¶ 26.

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[2]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[3] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[4] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[5] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[6] When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

---

[2] Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[3] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[4] *Celotex*, 477 U.S. at 324.

[5] *Matsushita*, 475 U.S. at 586.

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

4

one-side that one party must prevail as a matter of law."⁷

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."⁸ In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."⁹ Finally, the "judge may not make credibility determinations or weigh the evidence."¹⁰ Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."¹¹

**ANALYSIS**

The Court finds that Plaintiff failed to file her charge with the EEOC within 300 days of Defendant's alleged discriminatory act. For that reason, Plaintiff's claims are untimely and Defendant is entitled to summary judgment. Before a plaintiff may bring suit for employment discrimination, the plaintiff must first file a timely discrimination charge with the EEOC.¹² The applicable statute of limitations for filing a charge with EEOC begins to run from the date of "the

---

⁷ *Id*. at 251-52 (1989).

⁸ *Celotex*, 477 U.S. at 322.

⁹ *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

¹⁰ *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

¹¹ Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322 (1986).

¹² *Alexander v. Local 496, Laborers' Int'l Union of N. Am.,* 177 F.3d 394, 407 (6th Cir.1999), *cert. denied,* 528 U.S. 1154, 120 S.Ct. 1158, 145 L.Ed.2d 1070 (2000).

5

alleged unlawful employment practice."[13] Where alleged unlawful practices occur in a "deferral state" like Tennessee, which has enacted its own laws prohibiting discrimination in employment, the plaintiff must file an EEOC charge within 300 days of the alleged discriminatory act.[14]

Plaintiff must allege some unlawful employment practice that occurred within 300 days of August 30, 2006, the day on which Plaintiff filed her EEOC charge as to these claims. In other words, only alleged discriminatory acts occurring after November 3, 2005, are timely. It is undisputed that on September 15, 2005, Defendant first informed Plaintiff that her position was being eliminated effective September 30, 2005. Defendant later extended Plaintiff's position and notified her on October 5, 2005, that her last day of work would be October 14, 2005. On that date Defendant would place Plaintiff on unpaid personal leave of absence through November 11, 2005. During that time Plaintiff was permitted to apply for open positions within FedEx. If she was not able to secure a new position, her last day of employment would be November 11, 2005.

The United States Supreme Court has held that the limitations period does not begin to run on a claim for employment discrimination until an employer makes and communicates a final decision to the employee.[15] The *Ricks* Court explained that "the proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts become most painful."[16] In this case, Plaintiff has alleged that Defendant made the decision to terminate

---

[13] 42 U.S.C. § 2000e-5(e)(1).

[14] 42 U.S.C. § 12117(a); *Amini v. Oberlin College*, 259 F.3d 493, 498 (6th Cir. 2001). Title VII has what the Sixth Circuit has labelled "a dual statute of limitations," one for deferral states and a general 180-day limitations period for every other state. *Id*.

[15] *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *see also EEOC v. United Parcel Service, Inc.*, 249 F.3d 557, 561-562 (6th Cir. 2001).

[16] *Ricks*, 449 U.S. at 258.

Plaintiff on the basis of her disability. Defendant made and communicated its "final decision" to Plaintiff on October 5, 2005, the day Defendant notified her that her final day of work was to be October 14, 2005. Therefore, the alleged act of discrimination, that is, the decision to terminate Plaintiff on the basis of her disability, occurred no later than October 5, 2005. Because October 5, 2005 falls outside the 300-day period preceding Plaintiff's EEOC charge, her claim as to this event is now untimely.

It is true that Plaintiff was given until November 11, 2005 to secure another position with a FedEx company. Thus, arguably Defendant did not "communicate a final decision" to Plaintiff until Plaintiff had applied for and been denied any other positions within FedEx. However, the Sixth Circuit has held under similar circumstances that the 300-day filing period begins to run with an original notice of termination, not on the date the termination becomes final, even when the employer invites the terminated employee to seek other positions within the company.[17] Therefore, it cannot be said that Plaintiff's claim did not accrue until November 11, 2005.

Having determined that Defendant's final decision was communicated to Plaintiff no later than October 5, 2005, the Court finds that Plaintiff's claim of discrimination on the basis of her disability is now time-barred because Plaintiff failed to file a timely charge of discrimination

---

[17] *Janikowski v. Bendix Corp.*, 823 F.2d 945, 947 (6th Cir. 1987); *see also Walker v. Hoppe*, 239 Fed. Appx. 998, 999 (6th Cir. 2007); *Lennon v. Unumprovident Corp.*, 2008 WL 111050 (E.D. Tenn. 2008). Even if the Court accepted this reasoning, Plaintiff still could not show that she suffered a discriminatory decision within the 300-day filing period. The record shows that Plaintiff received two separate rejection letters after she had applied and interviewed for other positions within FedEx. The first letter communicating Defendant's decision not to hire Plaintiff is dated October 21, 2005; the second October 31, 2005. Plaintiff knew or should have known by October 31, 2005, that she would no longer be employed by Defendant or any other FedEx company. As a result, her claim accrued *arguendo* at the very latest on October 31, 2005, which is still outside of the 300-day filing period. Therefore, her claim would still be untimely.

with the EEOC within 300 days of October 5, 2005. Therefore, Defendant is entitled to summary judgment as to all of Plaintiff's claims.

**IT IS SO ORDERED.**

                                **s/ S. Thomas Anderson**
                                S. THOMAS ANDERSON
                                UNITED STATES DISTRICT JUDGE

                                Date: March 5th, 2009.